IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARDALAN AZIMIRAD                :
                                :
                                :
    v.                          :  Civil Action No. DKC 10-2853
                                :
HSBC MORTGAGE CORPORATION        :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage lending action are two motions: a motion to dismiss (ECF No. 12) filed by Defendant HSBC Mortgage Corporation ("HSBC") and a motion for summary judgment (ECF No. 17) filed by Plaintiff Ardalan Azimirad. The issues are fully briefed and the court now rules, no hearing being deemed necessary. *See* Local Rule 105.6. For the reasons that follow, HSBC's motion will be granted in part and denied in part, while Azimirad's motion will be denied.

**I. Background**

**A. Factual Background**

According to the complaint, Azimirad borrowed $297,000 in a mortgage loan with HSBC on February 5, 2007. (ECF No. 2 ¶¶ 9-10). In May 2009, purportedly because of Azimirad's "economic status," HSBC began the process of modifying his loan. (*Id.* ¶ 11). Following several weeks of negotiation, HSBC "approved" a

modification of the Loan on July 10, 2009 by sending an initial term sheet to Azimirad for his review. (*Id.* ¶¶ 12-13). A few weeks later, on August 1, 2009, Azimirad received additional loan modification documents, but they contained information that Azimirad felt was inaccurate. (*Id.* ¶ 15). Thus, for the next two months Azimirad "diligently, if not daily" sought correction of those documents from HSBC. (*Id.* ¶ 15). HSBC finally acceded, returning an accurate set of documents ("Loan Modification Agreement") to Azimirad on October 9, 2009. (*Id.* ¶ 16). Azimirad promptly executed the Loan Modification Agreement and returned it to HSBC on October 19, 2009, along with a check for the first payment due under the agreement. (*Id.* ¶ 17). By the time of the modification, the unpaid balance on the loan had risen to over $308,000. (*Id.* ¶ 18).

Azimirad alleges that HSBC failed to comply with its end of the Loan Modification Agreement. Instead, it accepted his first payment and placed it in a "holding account," purportedly "due to certain negotiations with a note holder." (*Id.* ¶ 19). After Azimirad learned in October 2009 that HSBC was not applying his payments to his loan, HSBC explained that the noteholder, CitiGroup Financial Corp. ("Citi"), had rescinded the Loan Modification Agreement. (*Id.* ¶¶ 20-23). Azimirad states that, from October 2009 until May 2010, he was told to "hold off on

2

payments" while HBSC negotiated the rescission with Citi. (*Id.* ¶ 23).[1] In lieu of making payments to HSBC, Azimirad placed "good-faith payments" in an escrow account. (*Id.* ¶ 26).

Azimirad alleges that, on July 6, 2010, he received a letter informing him that his note had been sold to HSBC. (*Id.* ¶ 27). He then attempted to determine whether his Loan Modification Agreement was still valid, but he received a variety of answers from HSBC; one representative told him that HSBC planned to honor the Agreement, while another told him that the Agreement would not be honored and the loan would need to be modified on different terms. (*Id.* ¶¶ 28-30). By letter dated August 9, 2010, counsel for HSBC informed Azimirad that his loan had been "referred [to counsel] . . . for legal action based upon a default under the terms of the loan agreement." (*Id.* at 31).

Azimirad states that he has "invested considerable time and money relying on the representation[s] of Defendant," and has suffered a "considerably diminished" credit score because of HSBC. (*Id.* ¶¶ 36, 43).

---

[1] HSBC also held a second mortgage on Azimirad's property, which Azimirad wished to renegotiate as well. (ECF No. 2 ¶ 70). HSBC told him he would be unable to do so until the issue with Citi was resolved on the first mortgage. (*Id.* ¶¶ 71-73).

### B. Procedural Background

On August 25, 2010, Azimirad filed a five-count complaint in the Circuit Court for Montgomery County; the complaint requests specific performance and a declaratory judgment while asserting claims of breach of contract, intentional misrepresentation, and promissory estoppel. (ECF No. 2). After HSBC was served on September 14, 2010, it removed the action to this court on October 14. (ECF No. 11 ¶¶ 1, 3). Then, on November 12, 2010, HSBC moved to dismiss counts one through four of the complaint. (ECF No. 12). Azimirad opposed on December 12, 2010, while simultaneously moving for summary judgment on all counts. (ECF No. 17). HSBC opposed the motion for summary judgment on February 23, 2011; in doing so, it argued that "judgment as a matter of law should be granted in favor of HSBC on all counts of [Azimirad]'s complaint." (ECF No. 22). Azimirad replied on March 11, 2011. (ECF No. 23).

## II. Motion to Dismiss

### A. Standard of Review

HSBC originally moved to dismiss the first four counts of the complaint pursuant to Rule 12(b)(6). (ECF No. 5). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). At this

stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In addition to the complaint itself, a court may consider "any documents that are attached to it." *CACA Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Indeed, Federal Rule of Civil Procedure 10(c) expressly

provides that a written instrument attached as an exhibit to the complaint "is a part of the pleading for all purposes." "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Rule 10(c)], the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

**B. Analysis**

HSBC first argues that counts one, two, and three of the complaint should be dismissed, as the Loan Modification Agreement – which was attached to the complaint as Exhibit 2 – does not bear a signature from HSBC. HSBC reasons that the absence of its signature means there is not a binding contract. Azimirad maintains, however, that there were other indications of the parties' intent to be bound by the Loan Modification Agreement, such that the absence of HSBC's signature is not fatal.

Generally speaking, "a signature is not required in order to bring a contract into existence, nor is a signature always necessary to the execution of a written contract." *Porter v. Gen. Boiler Casing Co., Inc.*, 284 Md. 402, 410 (1979); *see also Tow v. Miners Mem'l Hosp. Ass'n*, 305 F.2d 73, 75 (4th Cir. 1962) ("If a person has accepted a written agreement and has acted upon it he is bound by it, although he may not have set his hand

to the document."). "There is an exception to this rule, however, when the terms of the contract make the parties' signatures a condition precedent to the formation of the contract." *All State Home Mortg., Inc. v. Daniel*, 187 Md.App. 166, 181 (2009).[2] Even when there is no signature requirement in the explicit terms of the contract, other evidence might be used to establish that such signatures were meant to be a condition precedent. *Id.* (citing *Pradhan v. Maisel*, 26 Md.App. 671, 677-78 (1975)).

HSBC argues that its signature was a condition precedent to the Loan Modification Agreement. Notably absent from the contract is any explicit statement that HSBC signature's was in fact such a condition. *Compare All State*, 187 Md.App. at 183 (finding signatures were condition precedent where contract stated that "[t]his agreement is effective and binding . . . when both parties sign it"); *see also Chiricella v. Erwin*, 270 Md. 178, 182 (1973) (describing words and phrases indicating express condition precedent). Nevertheless, HSBC maintains that the condition can be inferred from other aspects of the contract. For one, it says, the Loan Modification Agreement

---

[2] "A condition precedent in a contract is a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *All State*, 187 Md.App. at 182.

7

contained a line for HSBC to sign as "Lender." Courts, however, have seemed generally unwilling to infer a condition precedent from a signature line alone. *See, e.g., Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 559 Pa. 56, 66 (1999) ("[T]he mere presence of signature lines does not determine whether the parties intended to be bound only upon the execution of the document by all the signatories."); *Allen v. Ford Motor Credit Co.*, 8 F.Supp.2d 702, 705 (N.D.Ohio 1998) (noting signature spaces are generally insufficient to establish condition precedent); *In re Marriage of Hasso*, 229 Cal.App.3d 1174, 1181 (1991) (finding attorney approval was not condition precedent to enforcement of settlement agreement, despite presence of signature line for attorney); *Ampex Credit Corp. v. Bateman*, 554 F.2d 750, 752 (5th Cir. 1977) (stating that blank signature lines do not conclusively establish condition precedent); *see also* 17A Am.Jur.2d Contracts § 175 (2010 supp.) ("Signature spaces in a form contract do not in and of themselves require that signatures of the parties are a condition precedent to the agreement's enforceability.").

Similarly, HSBC points to the "Lender/Mortgagee Acknowledgment" as further evidence that its signature was a condition precedent. That acknowledgment provided a space for an officer of HSBC to:

8

> . . . certify . . . that he/she, as such officer, being authorized to do so, executed the foregoing instrument [(*i.e.*, the Loan Modification Agreement)] for the purposes therein contained therein by signing the name of said Entity by himself/herself as such officer.

(ECF No. 2, at 21). But much like the signature line, the Lender's Acknowledgment does not conclusively establish as a matter of law that the signature was a *condition precedent*. This acknowledgment might have been only one step in the parties' process of memorializing their existing agreement. *See, e.g.*, *Atl. Banana Co. v. Standard Fruit & S.S. Co.*, 493 F.2d 555, 559 (5th Cir. 1974) ("[A]s prudent businessmen, the parties simply intended to memorialize their already obligatory agreement, rather than create a condition precedent to liability.").[3]

At bottom, "[t]he determination of whether a provision in a contract constitutes a condition precedent is a question of

---

[3] Indeed, the cover sheet HSBC sent Azimirad could be read to support such a view. The letter indicated that Azimirad had been "approved" for a loan modification. (ECF No. 2, at 15). The only condition precedent to the loan modification listed in that letter was a successful title check. (*Id.* at 16). The letter also specified that Azimirad was to return a check for $1,604.32 to HSBC – the payment due under the Loan Modification Agreement – along with his signed copy of the Agreement. (*Id.*). The payment requirement could arguably reflect HSBC's belief that the Agreement was in force from the moment Azimirad accepted it.

9

construction dependent on the intent of the parties." *N.Y. Bronze Powder Co., Inc. v. Benjamin Acquisition Corp.*, 351 Md. 8, 14 n.2 (1998). Where, as here, "ambiguity is found in a contract, it becomes a question of fact to decipher the intent of the parties in forming the instrument." *City of Bowie v. Mie Props., Inc.*, 398 Md. 657, 684 n.16 (2007). It is inappropriate to make such a factual determination at the pleading stage. *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992). The motion to dismiss will be denied as to counts one, two, and three.

HSBC also seeks to dismiss count four of the complaint, which asserts an "intentional misrepresentation claim." Azimirad's claim has five elements:

> (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation.

*Brass Metal Prods., Inc. v. E-J. Enters., Inc.*, 189 Md.App. 310, 353 (2009) (quoting *B.N. v. K.K.*, 312 Md. 135, 149 (1988)). In

this case, Azimirad would seem to rely on three representations allegedly made by HSBC:  (1) that it had placed a hold on Azimirad's loan account until an agreement was reached with Citi; (2) that it would modify Azimirad's first mortgage and honor the Loan Modification Agreement; and (3) that it would modify his second mortgage as well.  HSBC contends that the complaint does not actually allege that very first element of an intentional misrepresentation claim:  that any of these representations was false.

HSBC is correct.  The first representation – that HSBC had placed a "hold" on Azimirad's account pending resolution of the issues with Citi – is a simple statement of fact.  Yet there is no allegation anywhere in the complaint that HSBC did not in fact place a hold on his account during the negotiations with Citi.

As for the second two representations – that it would honor the Loan Modification Agreement and would also modify Azimirad's second mortgage – such representations amount to promises of performance by HSBC.  HSBC goes too far in essentially suggesting that such promises can never amount to misrepresentations because they are not "ascertainable facts." (ECF No. 12-1 (quoting *Robinson v. Parks*, 76 Md. 118 (1892))). To the contrary, "a person may commit fraud if he or she enters

11

an agreement to do something, without the present intention of performing." *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md.App. 97, 134 (2003); *Saint Annes Dev. Co., LLC v. Trabich*, 737 F.Supp.2d 517, 528 (D.Md. 2010). On the other hand, "plaintiff must prove that the defendant did not intend to uphold the promise at the time it was made." *Saint Annes Dev.*, 737 F.Supp.2d at 528. It is not enough for Azimirad to allege simply that HSBC made a promise it later did not keep, as "[a] fraudulent pre-existing intent not to perform a promise cannot be inferred from the failure to perform the promise alone." *First Union Nat'l Bank*, 154 Md.App. at 434 (quoting *Tufts v. Poore*, 219 Md. 1, 10 (1959)). Azimirad's complaint is devoid of even the most cursory suggestion that HSBC possessed a *present* intention not to fulfill the promises. Without any facts or allegations speaking to HSBC intentions at the time the promises were made, the complaint lacks the requisite element of falsity. The complaint as written contains only a pattern of broken promises, but "broken promises are remedied by contract law." *McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F.Supp.2d 362, 374 (D.Md. 2005). Count four must be dismissed without prejudice.

### III. Summary Judgment

In his opposition to HSBC's motion to dismiss, Azimirad requested summary judgment in his favor. In response, HSBC

opposed and then requested that "judgment as a matter of law" be granted in its favor "on all counts" of Azimirad's complaint. Thus, the parties have effectively lodged cross-motions for summary judgment. The court treats the motions accordingly.

**A. Standard of Review**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). The court reviews each motion under the familiar standard outlined above. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

### B. Analysis

Azimirad moves for summary judgment on all counts, apparently relying on the complaint and the exhibits attached alone. As a threshold matter, Rule 56 requires parties on summary judgment to support their factual positions by "citing to particular parts of materials in the record." Fed.R.Civ.P.

56(c).  Azimirad has not done so.  More importantly, however, there is simply not enough evidence to support a motion for summary judgment here.  Suffice it to say that merely attaching a contract to the complaint and then making certain unsworn assertions of breach is not enough to sustain a breach of contract claim on summary judgment.  Nor would such allegations support the broad claims of misrepresentation and "promissory estoppel" Azimirad advances.  "A plaintiff who seeks summary judgment and who fails to produce sufficient evidence on one or more essential elements of the claim is no more entitled to a judgment than is a plaintiff who has fully tried the case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which the plaintiff bears the burden of proof."  *Gray v. Metts*, 203 F.Supp.2d 426, 431 (D.Md. 2002) (quotation marks, brackets, and ellipses omitted).

HSBC also seeks summary judgment in its favor by relying on two agreements, a Loan Assumption Agreement and Loan Modification Agreement, signed by Azimirad and HSBC on January 11, 2011.  (ECF No. 22-1).  HSBC contends that the agreement amounts to an accord and satisfaction that extinguishes all of Azimirad's claims.  In response, Azimirad points generally to the existence of "other issues, disputes, and matters" that "must be satisfied or settled."

"An accord and satisfaction is a completed compromise of a disputed claim." *Wickman v. Kane*, 136 Md.App. 554, 561 (2001). In particular, an accord and satisfaction "is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement." *Weston Builders & Developers, Inc. v. McBerry, LLC*, 167 Md.App. 24, 54 (2006). Importantly, there must be a clear showing that the parties understood that the tendered settlement would extinguish all claims. "[N]othing short of an unequivocal and unambiguous statement of an offer to reach an accord will suffice to establish an accord and satisfaction." *Id.* at 79.

HSBC conclusorily asserts in its supporting memorandum that Azimirad "relinquish[ed] his claim to enforce to the terms of the alleged loan modification of 2009" in signing the new 2011 loan agreements. But there is no intimation in the 2011 agreements (or anywhere else in the record) that Azimirad intended to waive his earlier claims – and there certainly is no "unequivocal and unambiguous statement" of such an intention. Thus, the newer agreements do not evidently amount to accord.

It may be that the new agreements amount to a novation of the purported 2009 loan modification, as opposed to an accord and satisfaction. "With a substituted contract . . . the

16

parties intend the new agreement itself to constitute a substitute for the prior claim, thus immediately discharging the original claim." *Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 649 n.7 (2003) (quotation marks and brackets omitted); *see also Clark v. Ezra*, 286 Md. 208, 214-15 (1979); *accord Martin v. Breckenridge*, 14 F.2d 260, 262 (4th Cir. 1926). Because a novation "extinguishes the contract that was previously in existence between the parties," *Holzman v. Fiola Blum, Inc.*, 125 Md.App. 602, 626 (1999), Azimirad's suit to enforce the prior purported loan modification would fail because he would no longer hold any rights to enforce from that agreement. Nevertheless, because neither party addresses the matter of novation, it would be inappropriate to reach that issue at this time. Summary judgment will not be entered for either party.

**IV. Conclusion**

For foregoing reasons, HSBC's motion will be granted in part and Azimirad's motion will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
